**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

TODR R. BRIGLIN,

                        Plaintiff,

-against-

DR. HURLEY, FACILITY HEALTH SERVICES DIRECTOR, GROVELAND
CORRECTIONAL FACILITY;
DEP. WALKER, DEPUTY SUPERINTENDENT OF PROGRAMS, GROVELAND
CORRECTIONAL FACILITY;
RN "JANE DOE," GROVELAND CORRECTIONAL FACILITY
                       Defendants.
-------------------------------------------------------------X

**AMENDED COMPLAINT**
Pro-se
42 U.S.C. § 1983

19-CV-6927L

## I.    STATEMENT OF JURISDICTION

This is a civil action seeking relief and/or damages to defend and protect rights guaranteed by the

Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983 for a

violation of the plaintiff's federal rights under the Eighth Amendment and the Americans with

Disabilities Act (hereinafter ADA) and Section 504 of the Rehabilitation Act. Plaintiff asserts

that the Defendants failed to protect this inmate from harm, assault and battery, and equal

protection under the ADA and Section 504 of the Rehabilitation Act by failing to provide

reasonable accommodations for his disabilities and medical attention. The Court has jurisdiction

over the action pursuant to 28 U.S.C. §§ 1331, 1343, (3) AND (4), AND § 2201.

1

## II.   PARTIES TO THIS ACTION

## A. PLAINTIFF'S INFORMATION

>**Todd R. Briglin**
>**DIN# 13B0104**
>Franklin Correctional Facility
>62 Bare Hill Road, P.O. Box 10
>Malone, New York 12953

## B. DEFENDANT'S INFORMATION

Defendant No. 1: **Dr. Hurley, M.D.**
>Facility Health Services Director
>Groveland Correctional Facility
>7000 Sonyea Road
>Sonyea, New York 14556

Defendant No. 2: **Dep. Walker**
>Deputy Superintendent for Programs
>Groveland Correctional Facility
>7000 Sonyea Road
>Sonyea, New York 14556

Defendant No. 3: **RN "JANE DOE"**
>Groveland Correctional Facility
>7000 Sonyea Road
>Sonyea, New York 14556

## PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

**A**. Have you begun any other lawsuits in state or federal court dealing with the same facts involved in this action?

>YES ___X___ NO _____

Plaintiff has filed a New York State Civil Practice Laws and Rules – article 78 petition to compel the New York State Department of Corrections and Community Supervision to provide adequate medical care and reasonable accommodations for his Documented medical conditions.

**B**. Have you begun any other lawsuits in federal court, which relate to your imprisonment?

>YES ___X___ NO _____

2

Filed an initial complaint in the Western District Court with a decision and order granting leave to amend complaint with partially severing the complaint to the Northern District Court.

## III.    STATEMENT OF FACTS

A.    On August 8, 2015, while on Work Release at Rochester Correctional Facility the Plaintiff was struck by a vehicle while riding a bicycle back to the facility while in a crosswalk located on East Henrietta Road in the town of Rochester. The plaintiff-sustained injuries to his neck, left shoulder, mid and low back, both hips, both legs and his groin area. The plaintiff continued to work after the accident but under stringent work restrictions.

B.    In April 2016, while at work, the plaintiff slipped on grease causing his legs to slide into a split, which ripped muscles, and nerves in both the upper thigh area and groin while working at Applebee's in Hornell, New York (**see Exhibit A**)[1] – Independent Medical Examination, hereinafter "IME").

C.    The plaintiff subsequently has had surgeries in both legs (*Nerve Decompression surgery and Sports Hernia*) (**see Exhibit B**)[2]; in his abdominal wall (four [4] hernia repairs); to repair muscles and stretched nerves in his abdominal wall (*Dr. Elkwood; Plastic Surgery Center, Shrewsbury, NJ*); an umbilical hernia; has had three [3] nerves cut in the left thigh area (*Nerve Ablation*) (*Canandaigua Regional Medical Center*) ; and three [3] nerves cut in his lower back  (*Nerve Ablation*) (*Sawgrass Pain Management; Rochester, New York*).

D.    The plaintiff has also sustained injuries as a result of a blood clot entering his lungs and having right sided heart failure due to complications of the left leg surgery which

---

[1] Independent Medical Examination, hereinafter "IME"
[2] MRI Hospital for Special Surgery

petitioner now takes two [2] diuretics for edema and metoprolol for blood pressure (*Cardiologist/Pulmonologist; Strong Memorial Hospital*) .

E.   The plaintiff was prescribed Lyrica (nerve pain), Neurontin (nerve pain), Amatriptalyn (nerve pain), Ibuprofen, Oxycodone, and Tylenol. The plaintiff had been taking these medications since August of 2015 right after the motor vehicle accident (**see Exhibit C**)[3] (*Dr. Demian; Finger Lakes Occupational Health Services: Rochester, New York*).

F.   The plaintiff was arrested on March 11, 2019 and was incarcerated at the Steuben County Jail and was violated on parole and received an 18-month parole violation assessment.

G.   While incarcerated at the Steuben County Jail pending the disposition of the parole violation the plaintiff was only given Neurontin (Gabapentin) and Amatriptalyn for his nerve pain (**see Exhibit D**)[4]. The plaintiff when then transferred to the Downstate Correctional Facility (hereinafter "Downstate") prior to the settlement of the new charges (Approx. April 25, 2019). Upon arrival at Downstate, the plaintiff was placed in the infirmary for five [5] days to see the doctor and manage his medication (**see Exhibit E**)[5]. Additionally, Steuben County Jail medical records indicated that the plaintiff was confined to a wheelchair for mobility and restricted to lower levels and no stairs (**see Exhibit D**)[6]. The doctor at Downstate continued the plaintiff's medications and kept the plaintiff in the wheelchair but ordered a cane for short walks but kept the wheelchair for long distance. The plaintiff was then transferred to the Franklin Correctional Facility (hereinafter "Franklin"); his assigned facility, **by way of direct transport in a medical van**.

---

[3] Reserved Decision from Workers' Compensation Board
[4] Steuben County Jail Medical Records
[5] Downstate Medical Records
[6] Steuben County Jail Medical Records

**H.** On arrival at Franklin, on a Friday (5/3/2019), the plaintiff was placed in the infirmary until he could be seen by a doctor because he was in a wheelchair at the time and could not be released into general population without medical clearance (**see Exhibit C**)[7]. The plaintiff was seen by Dr. Pritti Mandalaywala on the following Monday (5/6/2019) at which time she took the plaintiff's wheelchair and discontinued the plaintiff's Neurontin **without consulting with a neurologist or running any tests to determine if this medication or the wheelchair was needed for his condition.**

**I.** The plaintiff had upcoming court trips Starting on June 4, 2019 through October 24, 2019 (**see Exhibit N**)[8] to Groveland Correctional Facility (hereinafter "Groveland") pertaining to the outstanding charges in Steuben County.

**J.** The plaintiff was transported back and forth between Franklin and Groveland, via the bus used to transport the general population. The trip from Franklin to Groveland is not direct:

    **I.** The plaintiff was first transported from Franklin in Malone, New York to Downstate in Fishkill, New York and on the same evening was transferred to a bus taking him to Ulster Correctional Facility (hereinafter "Ulster")in Napanoch, New York. **The plaintiff was shackled and leg-cuffed to another inmate for the entire trip from approximately 6:30 a.m. until 9:30 p.m.**

    **II.** The plaintiff then spent the evening at Ulster. The next day he was transported by bus to the Elmira Correctional Facility (hereinafter "Elmira") in Elmira, New York and switched buses to the Auburn Correctional Facility (hereinafter "Auburn") in Auburn, New York. Once again, **the plaintiff was shackled and leg-cuffed to another inmate from approximately 6:30 a.m. until 7:00 p.m.**

---

[7] Reserved Decision from Workers' Compensation Board
[8] Locator System Chronological History Display (Briglin 13B0104)

III. The plaintiff then spent two [2] nights in the infirmary at Auburn.

IV. The plaintiff was then transported via bus from Auburn to the Wende

Correctional Facility (hereinafter "Wende") in Alden, New York and was then

held for several hours at Wende ultimately being transported via bus to

Groveland, in Sonyea, New York. **The plaintiff was shackled and leg-cuffed**

**to another inmate for the entire trip.**

K.   The only difference in the return trip to Franklin from Groveland is that the petitioner was

transported from Elmira to Downstate without stopping at Ulster. Franklin is located in

northeastern New York close to the Canadian border. Groveland is located in

southwestern New York. Direct transportation between the two facilities would take

approximately five [5] hours driving time. Instead, the trip was extended for five [5]

days with several days extended beyond 10-12 hours of transport daily.

L.   The plaintiff was forced to endure these trips between (Franklin) the Northern District of

New York and the Western District of New York by way of bus transportation to

Groveland. The plaintiff was discriminated against, forced to walk without his ADA

approved cane and medically approved Back Brace, **shackled and leg-cuffed to another**

**inmate.**

M.   While DOCCS requires that inmates be shackled and leg-cuffed during outside transit,

there is no requirement that inmates be shackled to another inmate. In fact, when inmates

are taken to outside medical trips the inmates are individually shackled and leg-cuffed.

There are also inmates individually shackled and leg-cuffed during transfer transit trips.

6

N.  The plaintiff was assaulted while at Auburn and fell four [4] times while on the bus (**see Exhibit P**)[9] or housed at Groveland in a non-handicapped dorm and forced to climb hills at Groveland to get to his medication and meals. (Approx. 1 mile round trip)

O.  The plaintiff argues that these corrections officers or sergeant did not have to leg-cuff him to another inmate. At certain stops the plaintiff spoke to other sergeants and they did not leg-cuff me to other inmates and waited until the plaintiff climbed the stairs on the bus to hook my leg irons on him. These Officers and Sergeant that took his medically approved medical devices, showed deliberate indifference to his medical needs.

P.  Upon arrival at Groveland the first trip, the plaintiff notified RN "Jane Doe" that he could not endure another trip like he just took. He explained the increased pain he was in, as a result of transit,  the issues with falling on the bus and the fact that my blood pressure was high, should have been an indicator of the pain he was in. He explained to RN "Jane Doe" that they took my cane from me and that was one of the reasons why he fell on the bus. At this point, the medical staff could have intervened on his behalf and spoke with the doctor over his concerns of bus transportation. The plaintiffs concerns were ignored by RN "Jane Doe" and once the plaintiff seen Dr. Hurley on September 24, 2019, and told him about his issues on transport, he could have intervened and put in a request to have him moved by way of direct transport and not on the regular population bus if my medically approved cane and back brace were not allowed on the bus and the state of his injuries.

Q.  Throughout the trips, the plaintiff was not consistently housed in the infirmary or a handicapped housing unit; was forced to climb up numerous steps including when boarding and exiting the bus as well as movement throughout the various correctional facilities.

---

[9] Medical Records

**R.**   On the plaintiff's first arrival at Groveland, the plaintiff made RN "Jane Doe" aware of his disabilities; showed RN "Jane Doe" the medical passes which included the back brace, cane, CPAP machine and restrictions to **include main housing (Handicap Dorm) (see Exhibit F)**[10]. The plaintiff was not feeling well when he arrived at Groveland; blood pressure was very high, the pain he was in was debilitating and he was not given anything for the pain. RN "Jane Doe" said he probably had suffered another hernia, but did not submit the plaintiff to see or be scheduled to see a doctor. He put in for sick call the next day, and that was the first time he was told they could not help me as he was an in-transit individual.

**S.**   On the last trip into Groveland, the plaintiff was not placed in a handicapped dorm. In fact, the plaintiff spent six [6] months going back and forth between Franklin and Groveland and was never placed in a handicapped dorm at Groveland until he slipped and fell on water in the bathroom stall (*Porter just cleaned and mopped bathroom: no wet floor sign*) and landed on his back on the toilet (**see Exhibit G**)[11] (*No handicap hand rails in stalls*). After this incident on 9/20/2019, the facility realized that the plaintiff should probably be moved "up the hill" so that he was closer to the mess hall, "the pill shack," and a dorm that was handicap accessible (this did not take place for a few weeks after the fall). Unfortunately this accommodation was "too little, too late" as the fall had occurred and the damage had been done. The plaintiff alleges that he was denied reasonable accommodations by not placing the plaintiff in handicap housing when he first arrived at Groveland and made RN "Jane Doe" aware of his disabilities and showed the medical passes for the Back brace, cane, CPAP machine and Main Housing. The plaintiffs

---

[10] AUTHORIZED MEDICAL PASSES
[11] Accident Report (Groveland)

disabilities were ignored and disregarded as the plaintiff was an in-transit inmate and not their concern.

T.   The plaintiff was seen by a nurse the day of the fall (**see Exhibit G**) [12] and was eventually put in to see Dr. Hurley at Groveland on 9/24/2019, the plaintiff was told by the doctor that his hands were tied because the plaintiff was an in-transit inmate and did not belong to them, so there was not much the staff could do for me. Dr. Hurley did have x-rays (**see Exhibit Q**)[13] done of my back and re-scheduled my EMG (Electroneuromyography)(**see Exhibit H**)[14] 11/15/2019 [denied]), but all that was not worth the time it took to schedule as the plaintiff was sent back to Franklin and had to restart all medical proceedings, which to this date, nothing has been done, except the EMG-NCV.

U.   The plaintiff had sent a letter and an accommodation request to Deputy Superintendent of Programs Walker (**see Exhibit I**)[15] at Groveland requesting help with my medical issues and to be transferred to Groveland to alleviate the issues of transport and his lack of medical attention. The plaintiff did not receive a reply from Dep. Walker and Dep. Walker did not take steps to ensure the plaintiff was being treated for his disabilities or placed in a housing unit that was for handicap inmates per the medical permits from Franklin in which the plaintiff was placed in main housing for handicap purposes. The plaintiff's medical needs were ignored and the plaintiff was made to suffer every trip that was taken into Groveland and on the road since the plaintiff started going back and forth for court. After the fall, the pain in the plaintiffs back, groin, and legs was getting worse with no help from any of the staff at Groveland. He kept being told they could not help

---

[12] Accident Report (Groveland)
[13] X-rays (Groveland)
[14] Denial of EMG-NCV
[15] Letter to Dep. Walker

him since I was not their inmate, I was in-transit, and I belonged to Franklin. The pain caused the plaintiff to not be able to sleep, walk, go to the bathroom (urinate), and caused breathing issues as the pain was interfering with the plaintiffs collapsed lung and heart issues. The farther the plaintiff is forced to walk, the pain increases, especially in the groin area, where the nerves and muscles contract causing extreme pain in the groin.

V. The last trip at Groveland, the plaintiff ran out of his blood pressure medication. The plaintiff submitted a refill request and received all other medication (**see Exhibit J**)[16] except Metoprolol 100 mg. The fill date of the other medication was on June 21, 2019. The plaintiff wrote to the nursing staff and even went to the corrections officer on the dorm to inquire about my medication. The dorm officer called the infirmary and was told they would call him back, but never did. The plaintiff did not receive the blood pressure medication until the return to Franklin on July 16, 2019.

W. The plaintiff suffered from constant headaches and blurred vision for the entire time that the plaintiff was forced to be without the medication. The plaintiff could have went into a hypertensive crisis, experienced significant cardiac symptoms, had an exponentially increased likelihood of a cerebrovascular accident or transient ischemic attack and a host of any other high risk cardiovascular events.

X. On October 11, 2019, the plaintiff accepted a plea agreement for Attempted Criminal Possession of a Controlled Substance, a Class E Felony, with a determinate sentence of two [2] years and two [2] years post release supervision with court ordered shock ("Alternative" ) incarceration. This ended the trips between the facilities.

---

[16] Franklin and Groveland Medical Records

## IV.   STATEMENT OF CLAIMS

### FIRST CLAIM

Plaintiff's claim of deliberate indifference to a serious medical need and inadequate

medical care is governed by the Eight Amendment prohibition against Cruel and Unusual

Punishment. "The Eighth Amendment forbids 'deliberate indifference to serious medical needs of

prisoners' (***Spavone v. New York State Dept. of Correctional Services***, 719 F. 3d 127, 138 citing

***Estelle v. Gamble***, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976). As the Supreme Court

ruled in ***Gamble***, supra "[A]n inmate must rely on prison authorities to treat his medical needs; if

the authorities fail to do so, those needs will not be met.... [D]enial of medical care may result in

pain and suffering which no one suggests would serve any penological purpose. The infliction of

such unnecessary suffering is inconsistent with contemporary standards of decency as manifested

in modern legislation codifying the common law" (***Gamble***, 97, 104).

According to the United States Court of Appeals, Second Circuit in ***Spavone***, supra:

> "A deliberate indifference claim contains two requirements. The first requirement is objective
> 'the alleged deprivation of adequate medical must be 'sufficiently serious'. (***Salahuddin v.***
> ***Goord***, 467 F. 3d 263, 269 [2nd Cir. 2006) (quoting ***Farmer v. Brennan***, 511 U.S 825, 834,
> 114 S. Ct. 1970, 128 L.Ed.2D 811 [1994]. The second requirement is subjective: the charges
> officials must be subjectively reckless in their denial of medical care. *Id. at 280*. This means
> "that the charged official [must] act or fail to act while *actually* aware of a substantial risk of
> harm, not intend harm. *Id.* And awareness may be proven "from the very fact that the risk
> was obvious" (***Farmer***, 511 U.S. at 842, 114 S.Ct. 1970).

The Second Circuit further clarified the nature of a claim on inadequate medical care and

deliberate indifference to a serious medical need in ***Abreu v. Lipka***, 788 Fed. Appx. 28 stating

that:

> "The medical need is considered "serious" where the denial
> of treatment "could result in further significant injury or the unnecessary

11

and wanton infliction of pain." (***Harrison v. Barkley***, 219 F. id 132, 136 [2[nd] Cir 2000]) (quotation marks omitted). "Deliberate indifference" requires allegations of the defendants' subjective state of mind: the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." (***Smith v. Carpenter***, 316 F.3d 178, 184 [2[nd] Cir 2003]) (internal quotation marks omitted).

## FIRST PRONG

The inquiry on the first objective prong is to determine the seriousness of the underlying medical condition and the need for care for that condition. "The Second Circuit has stated that medical need is serious if it presents 'a condition of urgency that may result in degeneration or extreme pain" (***Shabazz v. Howard***, No. (:12-CV-1372 NAM/TWD, 2015 WL 5604662, at *4 (N.D.N.Y. Sept. 23, 2015) (quoting ***Chance v. Armstrong***, 143 F.3d 698, 702 [2[nd] Cir. 1998]).

The record is well established that the plaintiff suffers from serious medical conditions and has a well-documented need for care of those conditions. The record shows that the plaintiff sustained injuries to his neck, left shoulder, mid and low back, both hips, both legs and his groin area after being struck by a motor vehicle on August 8, 2015. Plaintiff suffered additional injuries when he slipped on grease causing his legs to slide into a split which ripped muscles and nerves in both the upper thigh area and groin while working which is documented in the Independent Medical Examination (**See Exhibit A**)[17]. This documentation was provided to DOCCS and is part of his medical record. Plaintiff has had surgeries in both legs (nerve decompression surgery and sports hernia); in his abdominal wall (four [4] hernia repairs); to repair muscles and stretched nerves in his abdominal wall; an umbilical hernia; has had three (3) nerves cut in the left thigh area; and three (3) nerves cut in his lower back. Plaintiff's medical

---

[17] Independent Medical Examination, hereinafter "IME"

records also document that he sustained injuries because of a blood clot entering his lungs and having right sided heart failure due to complications of the left leg surgery.

Plaintiff was prescribed numerous medications to deal with these medical conditions including: two (2) diuretics (Dr. Pritti Mandalaywala removed plaintiff's diuretics without consulting a specialist deviating from standard protocol for treatment Dr. Mandalaywala is not a heart or lung specialist) for edema and Metoprolol for blood pressure. In addition, the plaintiff was prescribed Lyrica (nerve pain), Neurontin (nerve pain), Amatriptalyn (nerve pain), Ibuprofen, Oxycodone, and Tylenol. The plaintiff was taking these medications since August of 2015 right after the motor vehicle accident and this treatment is well documented in the Reserved Decision from Workers Compensation Board (**see Exhibit C**) [18].

The plaintiff's combined medical conditions are objectively serious and meet the criteria established by the Second Circuit, which stated, "a medical need is serious if it presents 'a condition of urgency that may result in degeneration or extreme pain." There is no doubt that failure to treat these medical conditions can result in degeneration and extreme pain.

## SECOND PRONG

The second prong in evaluating a deliberate indifference and inadequate medical care claim requires that "the charged official must act with a sufficiently culpable state of mind" (***Hathaway v. Coughlin***, 37 F.3d 63 citing ***Wilson v. Seiter***, 501 U.S. 294, 298, 111 S.Ct. 2321, 2325, 115 1.Ed.2d 271 [1991]). The Court continues to define this prong by stating:

> "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. See *Farmer v. Brennan*, 511 U.S. 825, ---, 114 S.Ct. 1970, 1978, 128 L.Ed. 2d

---

[18] Reserved Decision from Workers' Compensation Board

13

811 [1994]). More specifically, a prison official does not act in a deliberately indifferent manner unless the official 'knows of and disregards an excessive risk to inmates health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw the inference ' *Id.* at ---, 114, S.Ct. at 1979." (*Hathaway v. Coughlin,* supra at 66.

A claim of deliberate indifference to an inmate's medical needs and inadequate medical care can allege either that the defendants <u>knew</u> that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants <u>should have known</u> that failing to provide the omitted medical treatment would pose a substantial risk to the inmate's health.

Upon arrival at Downstate, the plaintiff participated in the medical screening and testing provided to all inmates entering DOCCS custody. At that time the plaintiff informed the doctor of his various conditions and prescriptions although he did not have copies of the Independent Medical Examination or the Reserved Decision to provide to the doctor at that time. However, the doctor was able to confirm the truth of the plaintiff's medical conditions because of the medical examination. It was clear that the doctor understood the seriousness of the plaintiff's medical condition as the plaintiff was in a wheelchair and was transported via direct van transport from Steuben County Jail to Downstate and from Downstate to Franklin.

Plaintiff has provided copies of both the Independent Medical Examination and the Reserved Decision  (Since the first complaint, Franklin now has all medical records from plaintiff's outside primary care physician and Strong Memorial Hospital) to the medical and facility staff at both Franklin and Groveland. However, upon information and belief, plaintiff alleges that the medical and facility staff dismissed those medical records; did not use those records to guide his medical treatment and care; and insisted on having their own tests and consultations completed (nothing has transpired to date) before following the treatment protocol

14

that had been previously outlined by his primary care physicians and specialists. This demonstrates inadequate medical care and a clear deliberate indifference to the plaintiff's serious medical needs. The defendants should have understood the seriousness of the medical conditions and the need for adequate medical care and yet they failed to mitigate the risks and harms caused by inadequate treatment of the plaintiff's serious medical conditions in violation of his rights guaranteed by the Eighth Amendment of the U.S. Constitution.

The plaintiff would like to point in the IME (**see ExhibitA**)[19] performed by Dr. Helpenny, page 3, paragraph 4, third sentence, he describes that the plaintiffs neurologist had done nerve conduction testing of the lower extremities, which were, reported normal. Now, if we look at the EMG-NCV (**see Exhibit K**)[20] that was done on 12/31/2019, shows nerve damage (mild, chronic radiculopathy involving the L>R L4, L5 roots), which the plaintiff did not have prior to any of the falls while in DOCCS custody, especially the fall at Groveland (**see Exhibit G**)[21] when the plaintiff landed on his back. The plaintiff did not have the back brace on as the plaintiff was attempting to use the bathroom when he slipped on water and landed on his back.

In consideration of the objective prong for a deliberate indifference claim based on inadequate medical care, the court should conduct a two-part inquiry asking whether the prisoner plead that he or she was "actually deprived of adequate medical care" and whether the "inadequacy in medical care was sufficiently serious." *Thompson v. Racette*, 519 Fed. Appx. 32, 33 (2d Cir 2013) (citing *Salahuddin*, 467 F. 3d at 279-80); *Valdivieo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) ("[I]n cases where the inadequacy is in the medical treatment given," the analysis focuses on the inadequacy itself.) the oft-repeated refrain is, "so long as the treatment is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an

---

[19] IME
[20] EMG-NCV
[21] Accident Report (Groveland)

Eighth Amendment claim." *Chance*, 143 F. 3d 703 (emphasis added). However, what is adequate medical care?

The Second Circuit has found medical care to be adequate in the pleadings indicate it "is a reasonable response to the inmate's medical condition." *Salahuddin*, 467 F. 3d 279 (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 844 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (Thus, "prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under Cruel and Unusual Punishment Clause," and, conversely, failing "to take reasonable measures" in response to a medical condition can lead to liability.") In turn, Second Circuit precedent instructs that an **unreasonable** response can take the shape of "conduct...exposing an inmate to an unreasonable risk of future harm," *Smith*, 316 F. 3d at 188, a physician's choice "to give less efficacious treatment for reasons not deriving from medical judgment," such as cost, *Chance*, 143 F. 3d at 703-704, policy, *Rodriguez*, 606 Fed. Appx at 27; *Brock*, 315 F. 3d 167, or punishment, *Gill*, 824 F. 2d at 195. In sum, plaintiffs has established that the care was *prima facie* inadequate because it was driven by considerations other than the medical needs of the plaintiff.

Instead of acknowledging adequate medical care must be based on individualized medical judgments, providers argue frequency of medical care equates to adequacy. (Plaintiff was seen and sometimes treated, prescribed inadequate pain medication, never sent to pain management clinic or seen any specialists or adequate testing provided) With all due respect, the frequency of care does matter if the care itself is being driven by considerations other than the patient's medical needs. In fact, the Second Circuit has long held that even if prison officials give inmates access to treatment, they may still be deliberately indifferent to a patient's needs. *Archer v. Dutcher*, 733 F. 2d 14, 16 (2d Cir 1984) (even if a plaintiff receives "extensive" and

16

"comprehensive, if not doting, health care," he may still be able to identify deficiencies in care that establish a deliberate indifference claim).

Plaintiff asserts that:

**Defendant No. 1 – Dr. Hurley** - violated his rights guaranteed by the Eighth Amendment of the U.S. Constitution prohibited cruel and unusual punishment in that he denied the plaintiff adequate medical care and showed deliberate indifference to his serious medical needs by failing to address plaintiff's medical needs because he was not a Groveland inmate but was considered "in-transit" and a Franklin inmate; and

**Defendant No. 2 –Deputy Superintendent Walker -** violated his rights guaranteed by the Eighth Amendment of the U.S. Constitution prohibited cruel and unusual punishment in that he denied the plaintiff adequate medical care and showed deliberate indifference to his serious medical needs by ignoring the request for Reasonable Accommodations and not providing any assistance to the plaintiff; and

**Defendant No. 3 – RN "Jane Doe" -** violated his rights guaranteed by the Eighth Amendment of the U.S. Constitution prohibited cruel and unusual punishment in that she denied the plaintiff adequate medical care and showed deliberate indifference to his serious medical needs by not appropriately evaluating the plaintiff's medical needs upon arrival at Groveland. Ensuring he was placed in an appropriate handicap dorm and not immediately submitting plaintiff to a doctors consultation.

**SECOND CLAIM**

17

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of ...a public entity, or be subjected to discrimination by any such entity" (42 U.S.C. § 12132). Similarly, section 504 of the Rehabilitation Act "protects a 'qualified individual with a disability from exclusion of participation, denial of the benefits, or subjection to discrimination 'under any program or activity receiving Federal financial assistance', because of the individual's disability" (*West v. Goord*, 2017 WL 3251253, [W.D.N.Y. 2017]). The protections offered under both statutes extend to inmates in state correctional facilities. (See *Pa. Dep't of Corrs. V. Yeskey,* 524 U.S. 206, 213 [1998]) as cited in *Goord,* supra.

In order to establish a *prima facie* violation under these acts, plaintiff must show that (1) he is a qualified individual with a disability; (2) DOCCS is an entity subject to the acts; and (3) he was denied the opportunity to participate in or benefit  from DOCCS's services, programs, or activities or **DOCCS otherwise discriminated against him** by reasons of his disability. Plaintiff undoubtedly satisfies the first two elements: the plaintiff is a qualified individual because he suffers from many debilitating disabilities (see Medical records, IME and Reserved Decision) or that DOCCS is an entity that is subject to the statutes. ***Fulton v. Goord,*** 591 F. 3d 37, 43 (2d Cir 2009) (recognizing that DOCCS is subject to the ADA and RA). Both the ADA and the RA undoubtedly apply to state prisons and their prisoners. See ***Pa. Dep't of Corr. V. Yeskey,*** 524 U.S. 206, 209, 118 S. Ct. 1952, 141 L.Ed. 2d 215 (1998) (holding the ADA "unmistakably includes State Prisons and prisoners within its coverage").

The plaintiff asserts that he is being subjected to discrimination by a public entity in violation of the ADA and RA by denial of reasonable accommodations by Deputy

18

Superintendent Walker (Groveland), Dr. Hurley (Groveland) and RN "Jane Doe" (Groveland),
by being denied medical treatment, reasonable accommodations and by ignoring medical issues
from being transported on the general population bus. All of these defendants were aware of the
medical issues, the need for handicap accessible living arraignments (Dorm), and issues with
transportation. At any point, starting with the first trip into Groveland, any one of these
defendants could have intervened and made sure all of these issues were taken care of.

The defendants have shown deliberate indifference to my disabilities by denying
reasonable accommodations, which resulted in pain, and suffering, exacerbated existing
disabilities and caused more injuries because of trauma from being made to walk miles and
falling.

The plaintiff had advised RN "Jane Doe" and Dr. Hurley that he was in a wheelchair prior
to coming to Franklin and that he should not have been removed from the wheelchair, as he
needed it for long distance. He was still left at Groveland in the farthest dorm away from the
infirmary, chow hall, and pill shack. The plaintiff was forced to walk over a mile to receive his
medication or meals. Deputy Superintendent Walker is in charge of all ADA accommodations at
Groveland and should have known that moving the plaintiff to a Handicap dorm should have
taken place when the plaintiff arrived at Groveland, instead this did not take place until after the
plaintiff fell in the bathroom in a non-handicap dorm as the plaintiff was treated differently than
other inmates housed at Groveland as the staff treated the plaintiff as an in-transit inmate.

"The Second Circuit has held that in cases involving reasonable accommodations in the
prison context, courts should employ "the well-established ADA and RA burden shifting
framework." (Wright *v. N.Y. State Dept. of Corr*, 831 F. 3d 64, 76 [2nd Cir. 2016] as cited in
*Kramer v. Department of Correction*, 2019 WL 4805152). "Under that framework,

> The plaintiff bears the initial burdens of both production and
> Persuasion as to the existence of an accommodation that is
> Facially reasonable. The burden of persuasion then shifts to the
> defendant to rebut the reasonableness of the proposed
> accommodation. The burden on non-persuasion is in essence
> equivalent to the burden of showing, as an affirmative defense,
> that the proposed accommodation would cause the defendant to
> suffer an undue hardship." (*Kramer v. Department of Correction*,
> supra at *12).

The plaintiff has clearly shown well-documented evidence of his medical conditions and

his disabilities status that warrants the accommodations permitting direct transportation and

handicap accessible living (Dorm). The defendant acknowledges that even direct transport will

require him to be sitting for longer than (20) minutes but it significantly reduces the time in

transit and the risk of falling and injuring or re-injuring the plaintiff. The reasonable

accommodation of handicap accessible living (dorm), would have prevented the plaintiff from

falling in the bathroom if there were hand rails in the stall that the plaintiff could have used to

steady himself, instead the plaintiff landed on his back on the metal toilet re-injuring his low

back and causing more damage to groin area. The plaintiff was supposed to be sent to see an

urologist, orthopedic, and neurology, but has not been seen by any specialist.

The plaintiff would like to show the sequence of events from the time of the first falls at the

beginning of the trips between Franklin and Groveland and the lack of medical attention or

scheduled tests that have been denied or ignored:

- Fell twice on the bus from Auburn Correctional to Wende Correctional on 6/6/2019

    (Northern District Claim)

- Scheduled for CT scan at Alice Hyde Medical Center on 6/10/2019/first trip into

    Groveland: Was driven back to Franklin from Groveland; the plaintiff was awakened

    at 3:00 a.m. on Monday June 10, 2019 and informed that he had a CT scan scheduled

in Malone, New York. The plaintiff had just arrived at the Groveland Facility the prior

Thursday (6/6/2019) and the corrections officers at the facility made it known to the

plaintiff that they wanted him to refuse the medical appointment and trip. However,

the plaintiff did not refuse the trip because he was concerned about his medical issues;

needed to understand what was going on with him physically particularly because of

the recent falls during the bus transport the following week to Groveland. Therefore,

the corrections officers drove the plaintiff by van to Malone, New York (where the

plaintiff had just come from the prior week before on transit for the CT scan) where

they could have driven the plaintiff eight (8) miles down the road to Noyes Memorial

Hospital in Dansville, New York where this CT scan could have been performed.

- The results of the CT scan showed "no evidence of recurrent hernia seen." "No
  acutabnormality seen." This still did not diagnose the pain that the plaintiff is still
  having in his groin area.

- The two falls on the bus from Auburn to Wende exacerbated the injuries/disabilities
  the plaintiff was suffering from before re-incarceration. These two falls exacerbated
  the plaintiffs low back, causing pain and discomfort.

- Again, when the plaintiff arrived back at Franklin, he went to sick call to request to see
  a doctor about the falls on transit, as RN "Jane Doe" at Groveland told the plaintiff
  that there was nothing she could do for him. The plaintiff was scheduled to see Dr.
  Cahill who assured the plaintiff that he was scheduling an MRI of his back. To this
  date, no MRI has been done. On arrival to Franklin the plaintiff saw Dr. Cahill on
  5/28/2019 at which time the plaintiff was told by Dr. Cahill that a referral would be
  put in for an MRI. Upon research, the plaintiff requested copies of the denied referrals

(**see Exhibit L**)[22] and discovered that the MRI was never requested until 11/12/2019 in which it was denied. Either the first request back in May of 2019 was ignored or Dr. Cahill knew that it would be denied and just did not bother to request the referral. (Northern District Claim) This shows culpable deliberate indifference to the plaintiff's medical needs.

- The plaintiff alleges that even after reporting to RN "Jane Doe," (Groveland) Dr. Hurley (Groveland), Nursing staff at Franklin, Dr. Cahill (Franklin), and Dr. Mandalaywala (Franklin), that no tests were conducted to discover the reasons why the plaintiff was suffering in so much pain. The plaintiff reported to Dr. Cahill that his issues were more than likely nerve related. The plaintiff reported numbness in the left thigh area, problems urinating and radiating pain coming from his low back down both legs to his feet. Issues with walking as the bottom of the plaintiff's feet have secondary nerve pain.

- The CT scan (**see Exhibit M**)[23] was done before the slip and fall in the Bathroom at Groveland. The CT scan was also completed before the incident at Auburn (Northern District Claim), and there was never an MRI (**see Exhibit L**)[24] completed and the EMG-NCV (**see Exhibit K**)[25] did show Mild, chronic radiculopathy involving the L>R L4, L5 roots, completed after last trip and the assault and battery and the four [4] falls.

- Upon research on Westlaw; American Jurisprudence Proof of Facts, the plaintiff would like to point out the signs and symptoms of **Peripheral Nerve Injury**: (These

---

[22] Referral request denial (MRI)
[23] CT scan results
[24] Referral request denial (MRI)
[25] EMG-NCV results

signs and Symptoms are issues the plaintiff has and have become worse since the 4

falls while in DOCCS custody)

    **I.**   Diminished motor function (Muscle weakness); and

    **II.**  Loss of Sensation; and

    **III.** Altered sensory perception; and

    **IV.** Inability to walk properly (Location of limb in space); and

    **V.**   Incoordination; and

    **VI.** Pain; and

    **VII.** Cramps; and

    **VIII.** Fasciculation (Muscle twitching); and

    **IX.** Abnormal deep tendon reflexes; and

    **X.** Autonomic disturbances – Impaired control

- Perspiration
- Body temperature
- High blood pressure
- Bladder and Bowl issues

    **XI.** Hypersensitivity; and

    **XII.** Dysesthesia – Aching, burning and Electrical Charges.

- The plaintiff would also like to point out symptoms of compression and entrapment

  neuropathies: They develop slowly over weeks or months. Often, in early stages, the

  symptoms seem trivial and are ignored. If the diagnosis is made early, and if the

  offending mechanism is eliminated, the condition is usually reversible.

23

- Early on, abnormal sensations such as tingling and numbness predominate. Muscle weakness is usually discovered late, but careful questioning of the affected person may reveal that the person has had some difficulty opening jars with the right or left hand, or has noticed that the right or left foot has been dragging a bit or slapping for months. (The plaintiff's hands cannot grip things tightly and the left foot drags while the limb feels lost in space) Compression syndromes rarely result in a significant loss of muscle bulk.

- Manipulation or tapping at the area of suspected compression (such as wrist) will often aggravate the symptoms and help confirm the diagnosis. EMG-NCV studies performed two weeks after the initial compression injury will reveal a slowing conduction velocities. Later, if the compression persists or is severe, EMG-NCV studies may indicate a dropout (destruction) of axon fibers. In addition, EMG-NCV studies help characterize the type of injury and locate the site of compression. Since compression neuropathies usually occur in the distribution of single peripheral nerves, it is important to determine specifically which nerve is involved.

- Many peripheral nerves are long and follow a superficial course (close to the skin) that makes them distinctly vulnerable to mechanical injury. Mechanical injuries typically affect single nerves at sites where the nerves are most exposed to pressure and trauma. Compression and entrapment injury results from (1) a narrowing of the anatomical passageways through which nerves travel or (2) repeated occupational trauma[26] (The plaintiffs two accidents (car and work), the two falls on the bus (Northern District Claim), the fall in the bathroom (Western District Claim) when plaintiff landed on his back, and

---

[26] Aguayo, "Neuropathy Due to Compression and Entrapment," in Dyck et al., eds, 1 Peripheral Neuropathy 688 (1975)

24

the fall out of the bus on the stairs (Northern District Claim) [straining low back and groin])

- If one was to read the plaintiffs medical records, compare the x-ray done by Dr. Hurley, the CT scan, and the EMG-NCV, and relied on the plaintiff's complaints of injury and pain, a doctor who actually cares or is involved in the care and treatment of an individual, may have concluded that the plaintiff needs to be seen by specialists and proper testing done to get to the center of the issue and help treat and control the plaintiffs pain. The record reflects that neither doctor (Hurley, Cahill or Mandalaywala) took time to compare the results or symptoms and simply ignored the plaintiff's complaints and showed deliberate indifference to the plaintiff's serious medical needs.

- It is well established that the plaintiff was being taken care of by outside physicians for many years for his disabilities. Courts in this circuit and across the country have followed suit finding a stated claim for an Eighth Amendment violation when a prison doctor or official interferes with prescribed care. (*Gill v. Mooney, 842 F. 2d 192, 196 (2d Cir. 1987).Pointedly, the court said "[o]bviously, courts cannot go around second-guessing doctors. But neither can they ignore gross misconduct by a doctor, especially when it violates specific orders by the specialists in charge of the case." (Martinez, 443 F.2d at 924)*

- In addition, the pain in the plaintiff's lower back is a pain level of 7-9/10. Diagnosis per Dr. Patel (IME) (1) Spinal Stenosis in the lumbar region (2) Sacroilitis (3) Neuralgia and neuritis (4) Chronic pain (5) Chronic pain syndrome (6) Pudendal nerve entrapment (7) Disc displacement; affecting mobility of joints and range of motion.

25

Plaintiff asserts that:

**Defendant No. 1 – Dr. Hurley**  - has discriminated against him in violation of his rights under the ADA and RA and shown a deliberate indifference to his serious medical needs by denying him reasonable accommodations (Dorm and Direct Transport) and medical attention which subjected the plaintiff to substantial risk of harm to his health and safety and the unnecessary and unwanton infliction of pain in violation of his rights under the Eighth Amendment of the U.S. Constitution; and

**Defendant No. 2 –Deputy Superintendent Walker** - has discriminated against him in violation of his rights under the ADA and RA and shown a deliberate indifference to his serious medical needs by denying him reasonable accommodations (Dorm and Direct Transport) and medical attention which subjected the plaintiff to substantial risk of harm to his health and safety and the unnecessary and unwanton infliction of pain in violation of his rights under the Eighth Amendment of the U.S. Constitution; and

**Defendant No. 3 – RN "Jane Doe"** - has discriminated against him in violation of his rights under the ADA and RA and shown a deliberate indifference to his serious medical needs by denying him reasonable accommodations (Dorm and Direct Transport) and medical attention which subjected the plaintiff to substantial risk of harm to his health and safety and the unnecessary and unwanton infliction of pain in violation of his rights under the Eighth Amendment of the U.S. Constitution.

## V.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

26

On June 25, 2019, the plaintiff filed a grievance at Groveland [GRVL-18823-19] **(see Exhibit M)**[27] which was denied and appealed to the Superintendent who also in response denied the grievance. The petitioner appealed the decision to CORC in Albany but has yet to receive a response. When the plaintiff returned to Franklin, the petitioner grieved the same issue as the grievance in Groveland and made a continuation of the grievance to further the complaint. The Inmate Grievance Supervisor at Franklin forwarded the grievance back to the Inmate Grievance Supervisor at Groveland, in which it was dismissed saying that the inmate was no longer affected by this issue. I appealed to the grievance supervisor here at Franklin to have a review of the dismissal done, but have not received an answer on that issue either. The petitioner stated that he has exhausted his administrative remedies to the furthest possible steps that the petitioner could take.

## VI.   RELIEF SOUGHT

Plaintiff is seeking ($2,000,000) two-million dollars for compensatory and punitive damages from Defendants.

## XIII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATE: _MAY 19, 2020_

_____
Plaintiff *Pro Se*
Franklin Correctional Facility
62 Bare Hill Road, P.O. Box 10
Malone, New York 12953

Sworn to before me this
*19th* day of May 2020.

_____
NOTARY PUBLIC

---
[27] Grievance (Groveland)

Deborah A. Gumbus
Reg. No. 01GU6304688
Qualified in Franklin County
Commission Expires June 2, 20*22*

27